UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 1:12-cv-887 |
| *ex rel.*, SARA CURTIS HICKS, *et al.,* | : | |
| | : | |
| Plaintiff and Relators, | : | Judge Timothy S. Black |
| vs. | : | |
| | : | |
| EVERCARE HOSPITAL, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS
CERTAIN CLAIMS AND STAY REMAINING CLAIMS
PENDING ARBITRATION (Doc. 52);
AND (2) STAYING THIS CASE PENDING ARBITRATION**

This civil action is before the Court on Defendants' Motion to Dismiss Certain Claims and Stay Remaining Claims Pending Arbitration (Doc. 52), Relators' Response in Opposition (Doc. 55), and Defendants' Reply (Doc. 56).

## I.  BACKGROUND FACTS

Co-Relators Sara Curtis Hicks ("Curtis Hicks"), Leah Broderick ("Broderick") and Debbie Turner ("Turner") are all registered nurses who have worked for Defendant Evercare Hospice, Inc. ("Evercare")[1] and who allege that Defendants systematically defrauded Medicare and retaliated against Relators after Relators complained (Doc. 10).

---

[1] Defendants are entities comprising a chain of corporate ownership beginning with Evercare Hospice, Inc. d/b/a Evercare Hospice and Palliative Care, providers of in-home hospice care, and ending with Unitedhealth Group Incorporated.  Evercare is owned by Collaborative Care Holdings, LLC, which is owned by Optum Health Holdings, LLC, which is owned by United Healthcare Services, Inc., which is owned by Unitedhealth Group Incorporated (Doc. 10).  In this Order, the Court will refer to these Defendants collectively as "Evercare."

1

Specifically, Relators allege that Defendants admitted patients without mandatory consent and/or power-of-attorney designations, billed for continuous care when such care was neither reasonable nor necessary ("continuous care" allegations), and provided inadequate services. (*Id.*). As for the retaliation allegations, Relators claim that after their whistleblowing was discovered, Defendants overburdened their workloads, denied and interfered with Relators' vacation time, and created a hostile environment. (*Id.*). Defendants ultimately terminated Turner, allegedly constructively terminated Curtis-Hicks, and, according to Relators, continue to retaliate against Broderick. (*Id.*).

The Court has previously dismissed Relators' "eligibility" allegations as second-to-file behind a similar case in Denver, Colorado (Doc. 27). Defendants now move to dismiss the remaining retaliation claims and stay the whistleblower claims pending arbitration, which they contend is mandated by an Arbitration Policy which Relators signed as a condition of employment.

## II.    STANDARD OF REVIEW

Under the Federal Arbitration Act (the "FAA"), a written agreement to arbitrate disputes which arise out of a contract involving transactions in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (*citing* 9 U.S.C. § 2). The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a

speedier and less costly alternative to litigation.[1] *Id.*

When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue. *Stout*, 228 F.3d at 719. Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary"). Any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *Stout*, 228 F.3d at 714. The "primary purpose" of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479 (1989).

Section 3 of the FAA provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such agreement, shall on application of one of the parties, stay the trial of the action until such arbitration has been had in accordance with the terms of the Agreement, provided the applicant for the stay is not in default in proceeding with such arbitration. 9 U.S.C. § 3.

---

[1] The arbitration agreement at issue in this case clearly falls within the scope of the FAA which applies whenever there is an agreement to arbitrate contained in "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2.

3

Section 3 thus "requires" a court in which suit has been brought "'upon any issue referable to arbitration under an agreement in writing for such arbitration' to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).

When considering a motion to stay proceedings and compel arbitration under the FAA, a court has four tasks: (1) it must determine whether the parties agreed to arbitrate; (2) it must determine the scope of the arbitration agreement; (3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and (4) if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *Stout*, 228 F.3d at 714.

The Sixth Circuit applies "the cardinal rule that, in the absence of fraud or willful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions." *Allied Steel & Conveyors, Inc. v. Ford Motor Co.*, 277 F.2d 907, 913 (6th Cir. 1960). It is settled authority that doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration. *Id.* Indeed, "any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Nestle Waters North America, Inc. v. Hollman*, 505 F.3d 498, 504 (6th Cir. 2007). If parties contract to resolve their disputes in arbitration rather than in the courts, a party may not renege on that contract absent the most extreme circumstances. *Allied*

*Steel & Conveyors, Inc.,* 277 F.2d at 913. Furthermore, a district court's duty to enforce an arbitration agreement under the FAA is not diminished when a party bound by the agreement raises claims arising from statutory rights. *Id.*[2]

### III. ANALYSIS

All of the Relators signed an identical copy of the Arbitration Agreement in which they waived their right to a trial before a judge or jury in state or federal court in favor of arbitration under the policy. The Agreement broadly defines the scope of disputes subject to arbitration, including "any dispute UnitedHealth Group might have with a current or former employee which arises or relates to employment" and specifically references "whistleblower or retaliation claims" as being covered by the Arbitration Agreement.

Relators concede that their retaliation claims are covered by the Agreement. As such, they raise no opposition to Defendants' motion to dismiss such claims.

However, Relators contend Defendants should not be able to send their *qui tam* claims to arbitration for three reasons.

---

[2] This Court routinely enforces arbitration provisions and compels arbitration. *See, e.g., Crown Equip. Corp. v. Fla. Lift Sys.*, No. 3:04cv7, 2005 U.S. Dist. LEXIS 23112, at *2-3 (S.D. Ohio Dec. 26, 2005) (Rice, J.) (holding that parties must arbitrate the breach of contract dispute arising out of an agreement containing a valid arbitration provision); *Robert Lamb Hart Planners & Architects v. Evergreen, Ltd.*, 787 F. Supp. 753, 757 (S.D. Ohio 1992) (Spiegel, J.) (granting motion to compel arbitration provision where the firm's contract with the defendant corporation for a construction project contained a valid arbitration clause); *Eagle-Picher Indus. Inc., v. Asbestos Claims Facility, Inc.*, No. C-1-88196, 1988 U.S. Dist. LEXIS 11208, at *5 (S.D. Ohio June 23, 1988) (Rubin, J.) (upholding a stay of proceedings request in a breach of contract case between a company and its insurers pending the outcome of arbitration pursuant to a signed agreement between the parties).

First, Relators argue that as the real party in interest in the case is the government, which did not agree to be subject to arbitration, the government cannot be subjected to compelled arbitration. However, such argument fails as Defendants indicate that the government does not object to arbitration here, so long as any arbitration ruling is deemed a non-binding recommendation, subject to the government's consent (Doc. 56).

Relators next argue that their *qui tam* claims are not within the scope of any of the agreements. Defendants correctly reply that the Arbitration Agreement specifically references whistleblower claims as within its scope.

Finally, Relators argue that courts simply do not send *qui tam* claims to arbitration. In making such argument, Relators ignore this Court's decision in *Halley Deck v. Miami Jacobs Business College Company,* No. 3:12-CV-63, 2013 WL 394875 at *1 (S.D. Ohio, January 31, 2013) in which the Court did just that.

The Arbitration Agreement is clear, and it unambiguously covers whistleblower claims. There is no reason why it should not be followed, as Relators each agreed to its terms. The strong federal policies in favor of arbitration support arbitration in this instance and the government is not objecting. Accordingly, Relators' *qui tam* claims are properly stayed pending arbitration.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss Certain Claims and Stay Remaining Claims Pending Arbitration (Doc. 52).  Specifically, the Court dismisses Relator's retaliation claims, while the Court **STAYS** Relator's "continuous care" *qui tam* allegations.  Plaintiffs shall arbitrate all claims.  After arbitration on all claims, the parties shall either request that the Attorney General consent to resolution of the FCA claims as determined at arbitration or resume litigation on the False Claims Act claims in this Court.  The parties shall notify the Court promptly upon conclusion of the arbitration with respect to how they intend to proceed.

**IT IS SO ORDERED**.

Date:  7/23/15                                                                                  *s/ Timothy S. Black*
                                                                                                          Timothy S. Black
                                                                                                          United States District Judge